# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK MEBERG, individually; and | ) | |
| DOVE CONSTRUCTION, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-0054-CVE-PJC |
| | ) | |
| GOINS, RASH & CAIN, INC., a/k/a | ) | |
| GRC CONSTRUCTION SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court are defendant's motion to dismiss (Dkt. # 13) and motion to transfer venue (Dkt. # 14).[1] Defendant argues that, pursuant to Fed. R. Civ. P. 12(b)(2), plaintiffs' claims for breach of contract and unjust enrichment should be dismissed because this Court cannot exercise personal jurisdiction over defendant. Dkt. # 13, at 7. Defendant also argues, pursuant to Fed. R. Civ. P. 12(b)(6), that plaintiffs' claims should be dismissed because a valid and enforceable arbitration provision precludes plaintiffs' claims and because the doctrine of forum non conveniens applies. Id. at 8. Alternately, defendant moves for a transfer of this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of Tennessee. Id. Plaintiffs respond that this Court can exercise personal jurisdiction over defendant, that the arbitration provision is unenforceable, that the doctrine of forum non conveniens does not apply, and that this action should not be transferred. Dkt. # 15. Defendant has filed a reply. Dkt. # 16.

---

[1] Defendant's motions were filed as one document, but they were docketed as separate entries pursuant to Northern District of Oklahoma CM/ECF Administrative Guide of Policies and Procedures IX(B). For ease of reference, cites will be to Dkt. # 13.

**I.**

Defendant, a corporation with its principal place of business in the Eastern District of Tennessee, operates across the United States as a general contractor on large construction projects. Dkt. # 13, at 8-9. Although defendant has been involved in numerous projects outside of its home state of Tennessee, it does no business, maintains no offices, employs no agents, and owns no property in Oklahoma. Id. at 9; see also Dkt. # 13-3, at 1-2. At some point, defendant and plaintiff Dove Construction, LLC (Dove), which is based in Stillwater, Oklahoma, began a business relationship. Dove is owned by plaintiff Mark Meberg. Dkt. # 15-1, at 2. During the parties' relationship, Dove submitted bids to serve as a general subcontractor for projects on which defendant was the general contractor. Dkt. # 13, at 10. Dove was selected as the subcontractor for projects in Alabama, Kentucky, Missouri, North Carolina, and Tennessee. Dkt. # 15-1, at 37. Dove and defendant never worked together on a project located in Oklahoma. Id.; Dkt. # 15, at 3.

For each project on which Dove would serve as defendant's general subcontractor, defendant and Dove negotiated and signed a form contract.[2] Dkt. # 13, at 10; see also Dkt. # 13-1; Dkt. # 13-2; Dkt. # 15-1, at 11. Although the contracts differed in the name and description of the project, the sum to be paid to Dove for its work, and the date of signing, the majority of the terms of each contract was identical. Each contract contained the following provision: "For any claim, dispute or other matter in question which is not resolved by mediation involving an aggregate of claims in excess of $50,000 between [defendant] and [Dove], [defendant] shall have the sole discretion to

---

[2] The parties present to the Court three such contracts, for construction projects in Tennessee, Kentucky, and Alabama. Plaintiffs do not specify, in either their petition or later filings, if any of the contracts submitted to the Court are the contract or contracts that defendant allegedly breached. See Dkt. ## 3-1, 15. Plaintiffs likewise do not specify if defendant allegedly breached other contracts not presented to the Court.

arbitrate the dispute in Sullivan County, Tennessee . . . ." E.g. Dkt. # 13-1, at 6. Each contract also required Dove to provide defendant and other entities a warranty as to its materials, equipment, and work. E.g. id. at 4. Each party asserts that the negotiation and execution of the contracts took place in its home state. See Dkt. # 13, at 10; Dkt. # 3-1, at 2. According to plaintiffs, in March 2008, Meberg and Dove employee Cristi Smith met with defendant's employee Travis Chatman at a restaurant in Tulsa, Oklahoma for discussion and negotiation. Dkt. # 15-1, at 2, 7.

Following the execution of each contract, Dove would begin performance, which often included the hiring of sub-subcontractors. Defendant required Dove to seek approval for any sub-subcontractors it hired. Dkt. # 15-1, at 37. Dove sought and received such approval for a number of sub-subcontractors based in Oklahoma. Dkt. # 15, at 4. During the performance of the contract, the parties remained in frequent contact with one another. Id. at 5. Several times, defendant required Dove, pursuant to its warranty, to return to a construction project and complete additional work. Id. at 7.

Plaintiffs filed their petition in Oklahoma state court, alleging claims of breach of contract and unjust enrichment that stemmed from defendant's alleged non-payment under a contract. See Dkt. # 3-1. Defendant timely removed to this Court, Dkt. # 3, and now seeks dismissal of plaintiffs' claims.

## II.

Defendant argues that it does not have sufficient minimum contacts with Oklahoma for the exercise of personal jurisdiction as to plaintiffs' claims.[3] Dkt. # 13, at 11. Plaintiffs respond that the

---

[3] Plaintiffs' breach of contract and unjust enrichment claims are based on the same set of facts, making it unnecessary to analyze personal jurisdiction separately as to each claim.

3

Court may exercise personal jurisdiction over defendant based on defendant's contacts with Oklahoma. Dkt. # 15, at 6-7. When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205

F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id. "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Plaintiffs do not clarify whether defendant's asserted contacts with Oklahoma support either general or specific personal jurisdiction, so the Court will analyze each in turn.

A. General Personal Jurisdiction

General jurisdiction exists where a party's contacts with a state are so "'continuous and systematic' as to render [the party] essentially at home in the forum [s]tate." Goodyear Dunlop Tires

5

Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). Because general jurisdiction is unrelated to the events giving rise to the suit, "courts impose a . . . stringent minimum contacts test." OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (citations omitted). General jurisdiction existed where a defendant maintained an office and company files in the forum state, conducted numerous business activities in the state, distributed salary checks from in-state bank accounts, and engaged an in-state bank as a transfer agent. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952). On the other hand, general jurisdiction did not exist where the defendant sent an officer to the state for a negotiation, purchased equipment and training from an in-state business, sent personnel for training in the state, and accepted checks drawn from an in-state bank account. Helicopteros, 466 U.S. at 416.

Defendant's contacts with Oklahoma are not so extensive that they support general jurisdiction. Plaintiffs assert that defendant had the following contacts with Oklahoma: defendant engaged Dove, an Oklahoma entity, as a subcontractor on out-of-state construction projects; during the projects, defendant was in ongoing communication with Dove; Chatman, one of defendant's employees, met with Meberg and Dove's employee Smith in Oklahoma for a discussion and negotiation[4]; defendant permitted Dove to hire Oklahoma sub-subcontractors; and defendant required Dove to provide, and then to perform additional work pursuant to, warranties for its

---

[4] Chatman's affidavit, included as an exhibit to defendant's reply, states that no negotiation of any type occurred during the meeting. Dkt. # 16-1, at 1. However, Meberg's and Smith's affidavits state that such a negotiation did take place. Dkt. # 15-1, at 2, 7. When parties present conflicting affidavits as part of a Rule 12(b)(2) motion, factual disputes must be resolved in favor of the plaintiff. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). Thus, the Court must, for purposes of defendant's motion, assume that the parties conducted a discussion and negotiation at the meeting among Meberg, Smith, and Chatman.

6

services. Dkt. # 15, at 3-5. These are not the type of "continuous and systematic" contacts that would render defendant "essentially at home" in Oklahoma. See Goodyear, 131 S. Ct. at 2851. Unlike the defendant in Perkins, defendant does not do business in Oklahoma, it does not maintain an office or agent in Oklahoma, it owns no property in Oklahoma, and it has undertaken no construction projects in Oklahoma. Dkt. # 13-3, at 1-2. Defendant's contacts with Oklahoma are more like those in Helicopteros: limited business contacts that are insufficient for the exercise of general jurisdiction.

### B. Specific Personal Jurisdiction

Specific jurisdiction requires a two-step analysis. First, courts "must consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting World-Wide Volkswagen, 444 U.S. at 297). To do so, courts "determine whether the defendant has sufficient minimum contacts with the forum." Zenergy, Inc. v. Coleman, No. 09-CV-0381-CVE-FHM, 2009 WL 3571314, at *5 (N.D. Okla. Oct. 26, 2009) (citing OMI Holdings, 149 F.3d at 1091). If such minimum contacts exist, then courts must "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" Benton, 375 F.3d at 1075 (quoting OMI Holdings, 149 F.3d at 1091).

#### 1. Minimum Contacts

For a court to exercise specific jurisdiction over a defendant, that defendant must have such minimum contacts with the forum state that it has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of

7

the forum, and whether the plaintiff's claim arises out of or results from 'actions by the defendant himself that create a substantial connection with the forum state.'" OMI Holdings, 149 F.3d at 1091 (citing Burger King, 471 U.S. at 472; Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987)). Contacts exist "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations" between himself and residents of the forum.'" Id. at 475-76 (citations omitted).

Defendant argues that its contacts with Oklahoma are insufficient to meet the threshold for the exercise of specific personal jurisdiction. Dkt. # 13, at 8. It asserts that its only contacts with Oklahoma are its contracts with Dove, an Oklahoma entity, and that it lacks any other connection to Oklahoma, such as conducting business or maintaining offices. Id. at 3-4, 8; see also Dkt. # 13-3. The Supreme Court has said that a contract, by itself, does not establish sufficient minimum contacts to support personal jurisdiction, although a contract may serve as a contact in the specific jurisdiction analysis. Burger King, 471 U.S. at 478. To determine whether and to what extent a contract may serve as a contact for specific jurisdiction purposes, the Supreme Court has instructed lower courts to review the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. at 479. The parties provide little information about the negotiation of their contracts, with each party asserting that it negotiated and executed the contracts in its home state. Dkt. # 13, at 10; Dkt. # 3-1, at 2. A negotiation also occurred at the meeting among Meberg, Smith, and Chatman in Oklahoma, although it is unclear what contracts may have been affected by this negotiation. Dkt. # 15-1, at 2. The "future consequences" of the contracts, meaning the accomplishment of the construction projects, included communication between defendant and Dove's headquarters in Oklahoma. See Benton v. Cameco

8

Corp., 375 F.3d 1070, 1077 (10th Cir. 2004) (noting that, although the subject of a proposed contract would take place outside of the forum state, "the business end of the transactions" would occur in part in the forum state, where one party had its principal place of business). The contracts provided by the parties directly reference Oklahoma only as part of Dove's address; all other geographical references, including in the arbitration provision, are to other states. See, e.g., Dkt. # 15-1, at 16 (providing that arbitration will take place in Sullivan County, Tennessee). As to the parties' course of dealing, plaintiffs assert that defendant required Dove to return to project sites outside of Oklahoma to complete additional work pursuant to its warranty. Id. at 7. Based on the Court's review of the considerations outlined by the Supreme Court, the contracts do serve as contacts between defendant and Oklahoma, but they are not by themselves of sufficient strength to satisfy the minimum contacts analysis. See Burger King, 471 U.S. at 478-480; Benton, 375 F.3d at 1077.

Plaintiffs set forth many additional contacts between defendant and Oklahoma that, in combination with the contracts, arguably establish the requisite minimum contacts for the exercise of personal jurisdiction. According to plaintiffs, defendant "purposefully sought out" Dove, an Oklahoma entity, to complete its out-of-state construction projects. Dkt. # 15, at 3. Defendant's employee Chatman met with Meberg and Smith in Oklahoma, and the parties conducted "discussions and negotiations regarding ongoing jobs and future jobs." Id. at 3-4. Defendant and plaintiffs were in frequent contact with one another while the projects were ongoing. Id. at 5. Defendant allowed plaintiffs to hire sub-subcontractors from Oklahoma. Id. at 4. Finally, defendant required plaintiffs to supply a warranty as to their work. Id. at 7.

The Tenth Circuit's decision in Benton is instructive here. The Benton plaintiff, a Colorado resident, sued the defendant, a Canadian corporation, in Colorado for breach of a contract for the

9

sale of uranium. Benton, 375 F.3d at 1073-74. Prior to their contract, the parties had transacted business for more than five years. Id. at 1077. The parties exchanged significant correspondence during their negotiation, and the defendant sent several employees to Colorado to review the plaintiff's facilities. Id. The Tenth Circuit characterized these as "minor" contacts that would not individually support a finding of sufficient minimum contacts, but it nevertheless found that "in the aggregate, [the defendant's] 'conduct and connection with the forum State [to be] such that he should reasonably anticipate being haled into court there.'" Id. at 1078 (quoting World-Wide Volkswagen, 444 U.S. at 297). In making this finding, the appellate court emphasized that this was "a very close case" that "barely satisf[ied] the minimum contacts standard." Id. at 1076, 1080.

A similar accumulation of contacts links defendant to Oklahoma. Defendant for several years engaged in a continuous business relationship with Dove, an Oklahoma entity, and that relationship included the execution of multiple contracts. Dkt. # 13, at 10. The parties, like the parties in Benton, engaged in significant correspondence as part of the negotiation and performance of their contracts. Dkt. # 15, at 3; see also Dkt. # 15-1, at 32-35. One of defendant's employees traveled to Oklahoma for a meeting with Meberg and Smith, and the meeting included some amount of discussion and negotiation. Dkt. # 15-1, at 2. Additionally, defendant required Dove to provide a warranty for its services and to perform additional work pursuant to that warranty. Dkt. # 15, at 7. While these contacts, like those in Benton, are "minor," in the aggregate they are such that defendant could "reasonably anticipate being haled into court" in Oklahoma. Benton, 375 F.3d at 1078.

Sufficient contacts connect defendant to Oklahoma, although these contacts, like those in Benton, "barely satisfy[] the minimum contacts standard." Id. at 1080. These contacts show that defendant "purposefully directed" its activities at Oklahoma; they were not the "unilateral activity"

of another. See Burger King, 471 U.S. at 472, 474. Plaintiffs' claims for breach of contract and unjust enrichment obviously "arise[] out of or result[] from" defendant's activities in Oklahoma, as plaintiffs claim breach of contract and all of defendant's connections to Oklahoma relate to its contracts with Dove. OMI Holdings, 149 F.3d at 1091. Thus, the first part of the specific jurisdiction analysis is satisfied.

### 2. Traditional Notions of Fair Play and Substantial Justice

As sufficient minimum contacts exist between defendant and Oklahoma, the Court must now "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" OMI Holdings, 149 F.3d at 1091. The touchstone of this analysis is whether the exercise of personal jurisdiction would be "reasonable." Id. The determination of reasonableness "evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." Id. at 1092 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994). As part of this analysis, courts are to consider:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

Id. at 1095 (citing Asahi Metal, 480 U.S. at 113).

The first factor is the burden on defendant of litigating in plaintiffs' chosen forum. Id. The Tenth Circuit has said that "[t]his factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." Id. at 1096

(citing World-Wide Volkswagen, 442 U.S. at 292). Defendant is certainly burdened by litigating in Oklahoma, as it conducts no business, has no offices or other property, and employs no agents in the state. See Syntroleum Corp. v. Fletcher Int'l, Ltd., No. 08-CV-384-JHP-FHM, 2008 WL 4936503, at *6 (N.D. Okla. Nov. 17, 2008). The burden on defendant is not so great as in those cases, such as Benton, where the defendant is a foreign corporation being forced to litigate in the United States. See Benton, 375 F.3d at 1079; see also Asahi Metal, 480 U.S. at 114. Nevertheless, this factor weighs against the exercise of personal jurisdiction.

The second factor analyzes Oklahoma's interest in resolving the parties' dispute. OMI Holdings, 149 F.3d at 1095. Oklahoma "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 474 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). However, courts in this circuit have held that a forum state's interest is minimized when the law of another state would govern. See Payless Shoesource, Inc. v. Joye, No. 11-CV-4145-CM, 2012 WL 646024, at *5 (D. Kan. Feb. 27, 2012); Syntroleum, 2008 WL 4936503, at *6; see also OMI Holdings, 149 F.3d at 1096 ("The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law."). Defendant argues that this factor weighs against the exercise of personal jurisdiction because, under Oklahoma choice of law analysis, the law of states other than Oklahoma would govern. Dkt. # 13, at 18. Plaintiffs do not respond to defendant's argument. See Dkt. # 15, at 8. Oklahoma statute provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." OKLA. STAT. tit. 15, § 162. The Tenth Circuit has construed this statute to restrict "application of the law of the place of performance of

12

a contract to cases in which the place of performance is indicated in the contract." Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir. 1985). Plaintiffs have yet to identify the contract or contracts that defendant allegedly breached. Thus, the Court cannot determine the law that would govern plaintiffs' claims, and so this factor neither favors nor disfavors the exercise of personal jurisdiction over defendant.

The third factor examines "the plaintiff's interest in receiving convenient and effective relief" in the forum state. OMI Holdings, 149 F.3d at 1095. "This factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in a another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." Id. at 1097 (citing P. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985)). Defendant argues that Tennessee is a viable alternate forum for plaintiff's claims. Dkt. # 13, at 19. Tennessee recognizes both breach of contract and unjust enrichment claims, see Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512 (Tenn. 2005); Ingram v. Cendant Mobility Fin. Corp., 215 S.W.3d 367 (Tenn. Ct. App. 2006), and there is no suggestion that plaintiffs' "chances of recovery will be greatly diminished" in Tennessee. OMI Holdings, 149 F.3d at 1097. Plaintiffs argue that the burden of hiring counsel outside of Oklahoma would be "harsh" and would "extremely limit [p]laintiff's [sic] ability to pursue his [sic] claims." Dkt. # 15, at 9. However, plaintiffs do not explain why hiring counsel outside of Oklahoma is significantly more onerous than hiring counsel in Oklahoma. As a result, there seems little reason to believe that "the burden [would] be so overwhelming as to practically foreclose pursuit of the lawsuit." Id. This factor weighs against the exercise of personal jurisdiction over defendant.

The fourth factor concerns "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which the Tenth Circuit has stated is the examination of "whether the forum state is the most efficient place to litigate the dispute." Id. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Benton, 375 F.3d at 1079 (quoting OMI Holdings, 149 F.3d at 1097). Each party asserts that its witnesses and evidence are located solely in its home state. Dkt. # 13, at 19; Dkt. # 15, at 9. The location of the wrong underlying this action and the law that will govern this case cannot be determined until plaintiffs identify the contract or contracts that defendant allegedly breached. Defendant argues that this Court's exercise of jurisdiction would result in piecemeal litigation. Dkt. # 13, at 19. It points to the arbitration provision in each contract presented to the Court: "For any claim . . . involving an aggregate of claims in excess of $50,000 between [defendant] and [Dove], [defendant] shall have the sole discretion to arbitrate the dispute in Sullivan County, Tennessee . . . ." Dkt. # 13-1, at 7. As this Court has previously written, "[w]hen an arbitration agreement includes a forum selection clause, only a . . . court within the specified forum may issue an order compelling arbitration." Global Client Solutions, LLC v. Fluid Trade, Inc., No. 10-CV-0123-CVE-TLW, 2010 WL 2690373, at *7 (N.D. Okla. July 1, 2010) (citing Ansari v. Qwest Commc'ns Corp., 414 F.3d 1214, 1219, 1220 (10th Cir. 2005)). Should defendant wish to enforce the arbitration provision, it could not do so in this Court; defendant would need to file a separate action in Tennessee.[5] The

---

5    Plaintiffs argue that the arbitration provision is unenforceable. Dkt. # 15, at 10. However, the Court need not determine as part of the personal jurisdiction analysis whether the provision is enforceable. It is enough at this point to state that, if the provision is valid, then the Court could not enforce it.

existence of the arbitration provision means piecemeal litigation would be likely were this Court to exercise personal jurisdiction over defendant. Thus, this factor weighs against the exercise of personal jurisdiction.

The fifth and final factor examines "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." OMI Holdings, 149 F.3d at 1097. The parties agree that this factor weighs neither for nor against the exercise of personal jurisdiction over defendant. Dkt. # 13, at 20; Dkt. # 15, at 9. Upon review, the Court can discern no substantive social policy that would be affected by either the exercise or non-exercise of jurisdiction here.

The second step of the specific personal jurisdiction analysis asks whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice," which courts have interpreted as asking whether the exercise of jurisdiction would be reasonable. OMI Holdings, 149 F.3d at 1091. As stated above, sufficient minimum contacts connect defendant to Oklahoma, but these contacts are not strong. Defendant therefore "need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry." Benton, 375 F.3d at 1080 (citing OMI Holdings, 149 F.3d at 1092). The majority of the factors weigh against the exercise of personal jurisdiction over defendant, and the remaining factors are neutral. Based on these considerations, asserting personal jurisdiction over defendant would "offend[] 'traditional notions of fair play and substantial justice.'" Asahi Metal, 480 U.S. at 105 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Thus, the Court finds that it does not have personal jurisdiction over defendant.[6]

---

[6] As the Court lacks personal jurisdiction over defendant, it need not consider defendant's other arguments in favor of dismissal.

**III.**

As an alternative to its motion to dismiss, defendant moves for a transfer of venue, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of Tennessee. Dkt. # 13, at 28. However, "where the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, '[t]he correct course . . . [is] to transfer the action pursuant to [28 U.S.C. § 1631].'" Trujillo v. Williams, 465 F.3d 1210, 1223 (10th Cir. 2006) (quoting Ross v. Colo. Outward Bound Sch., Inc., 822 F.2d 1524, 1527 (10th Cir. 1987)). "Whenever a civil action is filed . . . and th[e] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. District courts may invoke § 1631 sua sponte. Trujillo, 465 F.3d at 1222. Before a transfer under § 1631 may take place, the Court "must ascertain that the proposed transferee court is one in which the action 'could have been brought at the time it was filed.'" Viernow v. Euripides Dev. Corp., 157 F.3d 785, 793 n.16 (10th Cir. 2012) (quoting 17 MOORE'S FEDERAL PRACTICE § 111.53 (Matthew Bender 3d ed.)). If so, the transferor court has the discretion to transfer the action if it is "in the interest of justice," although a transfer is not required. Trujillo, 365 F.3d at 1222 ("Although . . . § 1631 contain[s] the word 'shall,' we have interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice"). "Factors considered in deciding whether a transfer is in the interest of justice include whether the claims would be time barred if filed anew in the proper forum, whether the claims alleged are likely to have merit, and whether the claims were filed in good faith or if, on the

16

other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction." In re Cline, 531 F.3d 1249, 1451 (10th Cir. 2008).

Defendant proposes to transfer this action to the United States District Court for the Eastern District of Tennessee, Dkt. # 13, at 28, so the Court must first determine if this action could have been brought in that court at the time it was filed. Viernow, 157 F.3d at 793 n.16. Defendant admits that it is subject to personal jurisdiction in the Eastern District of Tennessee, as it is a Tennessee corporation with its principal place of business in the Eastern District of Tennessee. Dkt. # 13, at 29; see also Viernow, 157 F.3d at 793 n.16 (stating that a district court would have personal jurisdiction over any corporation that had its principal place of business in that district). Under 28 U.S.C. § 1391(b), venue would be proper in the Eastern District of Tennessee, as that is the district in which defendant resides. See 28 U.S.C. § 1391(b)(1); see also id. § 1391(c)(2) (". . . [A]n entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ."). Thus, plaintiffs could have brought this action in the Eastern District of Tennessee.

The Court has reviewed plaintiffs' claims to determine if a transfer is "in the interest of justice." The first factor to consider is whether plaintiffs' claims would be time barred if filed now. In re Cline, 531 F.3d at 1451. Plaintiffs allege claims for breach of contract and unjust enrichment, but they do not specify the contract or contracts allegedly breached. See Dkt. # 3-1. Tennessee has a six year statute of limitations for actions based on contract. TENN. CODE ANN. § 28-3-109(a)(3). The parties have presented the Court with three contracts, all of which were executed in 2008. Dkt. # 13-1, at 1, 10; Dkt. # 13-2, at 1, 10; Dkt. # 15-1, at 11, 20. Thus, if plaintiffs were to refile now in the Eastern District of Tennessee, any claim for breach of contract based on the contracts

17

submitted to the Court would be time barred. The second factor is whether plaintiffs' claims are likely meritorious. In re Cline, 531 F.3d at 1451. Lacking information about the specific contract or contracts at issue, the Court cannot analyze this factor. The third factor is whether plaintiffs filed their claims in this Court in good faith. Although the Court has found that it lacks personal jurisdiction over defendant, that result was not so obvious that plaintiffs' filing was not in good faith. Based on the two factors that may be considered at this point, the interests of justice favor a transfer of this action to the Eastern District of Tennessee, rather than dismissal of plaintiffs' claims for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 13) is **granted** to the extent that the Court lacks personal jurisdiction over defendant but **denied** as to dismissal of plaintiffs' claims against defendant on that basis. Defendant's motion to dismiss (Dkt. # 13) is **moot** as to defendant's arguments that plaintiffs' claims are precluded by the arbitration provision and that the doctrine of forum non conveniens applies.

**IT IS FURTHER ORDERED** that defendant's motion to transfer venue (Dkt. # 14) is **granted**.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to **transfer** this case to the United States District Court for the Eastern District of Tennessee.

**DATED** this 2nd day of June, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

18